# IN THE UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA          :

              **v.**          :          **CRIMINAL NO. 25-460-3**

NANCY RIOS VALENTIN          :


## GOVERNMENT'S MOTION FOR PRETRIAL DETENTION

NANCY RIOS VALENTIN is the glue at the center of this almost decade long conspiracy. She is the paramour of the number two defendant and the sister of the now deceased previous leader of the DTO. For years she managed the drug schedule, kept firearms in her home, and amassed significant amounts of drug proceeds. Based on this conduct and more on October 22, 2025, a grand jury in the Eastern District of Pennsylvania returned a 41-count indictment charging NANCY RIOS VALENTIN and 32 other co-defendants running one of Philadelphia's largest and most entrenched fentanyl and cocaine trafficking operations, centered on the 3100 block of Weymouth Street, from 2016 through 2025.

Defendant NANCY RIOS VALENTIN was one of the leaders of this drug trafficking organization—the "Weymouth DTO"—along with her paramour RAMON ROMAN-MONTANEZ.   She lived on the block, at 3152 Weymouth Street, helped control the drug shift schedule, stored drugs-for-sale in her own residence, and also helped oversee the daily street operations of the DTO.  Defendant N. RIOS-VALENTIN was specifically charged with: conspiracy to traffic over 400 grams of fentanyl, 500 grams of powder cocaine, and 280 grams of crack cocaine between 2016 and September 2025, in violation of 21 U.S.C. §§ 846, 841(a)(1),

(b)(1)(A), (b)(1)(B) (Count One); and possession of 28 grams or more of crack cocaine and fentanyl with the intent to distribute, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B), (b)(1)(C) (Count Thirty-Six), pertaining to the 6 grams of fentanyl and 66 grams of crack cocaine found in her residence, 3152 Weymouth Street, on August 13, 2025. She is also charged with one count of conspiring to sponsor, exhibit, and possess animals for the purposes of an animal fighting venture, in violation of 18 U.S.C. § 371 (Count Forty-One). In addition, NANCY RIOS-VALENTIN was involved in the shipment of a half-kilogram parcel of fentanyl to the DTO in May 2025. She faces a mandatory minimum sentence of 10 years' imprisonment.

Due to the significant amount of fentanyl, cocaine, and crack cocaine underlying the charges, a presumption in favor of detention exists pursuant to the Bail Reform Act. The defendant cannot overcome that presumption here because—as explained in more depth below—the strength of the government's case, the deadly and addictive nature of the drugs the defendant was distributing, the length of the sentence the defendant faces, and a number of factors about the defendant's background, together demonstrate that the defendant presents a risk of flight and danger to the community such that there is no condition or combination of conditions that will reasonably secure the defendant's presence at trial. In short, the presumption in favor of detention cannot be rebutted and the defendant should be detained for his danger to the community and risk of flight.

## I.   OVERVIEW OF INDICTMENT AND "WEYMOUTH DTO"

In support of this motion, the government makes the following representations and proposed findings of fact:

1.      The 41-count indictment in this case charges defendant NANCY RIOS-VALENTIN along with 32 other co-defendants, with a near decade-long conspiracy to traffic

fentanyl, cocaine, and crack cocaine, in Philadelphia, from January 2016 through October 2025. Specifically, defendant RIOS-VALENTIN and her co-defendants were part of the drug trafficking group that has operated primarily on the 3100 block of Weymouth Street, Philadelphia, termed the "Weymouth DTO."

2.     The 3100 block of Weymouth Street has plagued the City of Philadelphia of years, as it has functioned as what is effectively an open-air drug market that operates 24 hours a day, 365 days a year, where addicts can come to buy fentanyl, cocaine, and crack cocaine, up and down the block.  The Weymouth DTO uses multiple occupied and abandoned houses and lots on the block—as well as trash cans, ground drains, cars, tires, and porches—to store small to medium amounts of drugs in easily-accessible places, so they can be procured for buyers who arrive on the block to make drug transactions.  A photograph of the 3100 block of Weymouth Street, taken on April 30, 2024, which was a day that the DTO was handing out free samples of a new product line, is shown below:



3.     In addition to storing drugs in various locations along the 3100 block of Weymouth for daily sales by street dealers, the Weymouth DTO uses several off-the-block

locations to package and store drugs that are delivered to the block through "reups."  Up until August 2025, when the FBI searched both locations, the Weymouth DTO used 6217 Tackawanna Street, in Philadelphia, as a bag-house for fentanyl, and it used a garage at 3326 Rorer Street, in Philadelphia, as a packaging and storage center for crack cocaine.  The Weymouth DTO also uses a particular lot on the block, at 3153 Weymouth Street, as a meeting place, stash location, and location to cook crack cocaine. The location, called the "bunker," consists of a drywall structure with a physically connected tent structure, with a door in between that can be opened or closed.

4.      Over the course of the FBI and Philadelphia Police Department's investigations in this case, roughly 3.9 kilograms of fentanyl, 727 grams of crack cocaine, and 3.8 kilograms of powder cocaine were seized by law enforcement, either from controlled buys, arrests on the block, or the execution of search warrants.  But those amounts—arrived at through tallying up one-moment-in-time snapshots, either of drugs transacted with an individual buyer or drugs stored in a location for imminent sale—do not *come close* to representing the enormous quantity of illegal drugs sold by this DTO over the 9-year conspiracy charged.   A conservative estimate, as the evidence underlying the case will show, is that the Weymouth DTO, for the 9-year conspiracy period charged, trafficked roughly 10-18 kilograms of fentanyl and 16-30 kilograms of crack cocaine, to buyers in Philadelphia.

5.      The Weymouth DTO also commits violent assaults, including murders, to maintain control over its drug empire on the 3100 block of Weymouth Street and the surrounding blocks.   The indictment describes assaults committed by defendants in this case, such as on November 7, 2024, when defendants JOSUE ONEILL ORTIZ-BETANCOURT and JONATHAN TORRES, along with Co-Conspirator 12 (now deceased) and another individual,

4

chased a car off the 3100 block of Weymouth and repeatedly shot at the car around the corner, while defendant ELLIOT MATTEI-RODRIGUEZ, a/k/a "Elio," pulled out a firearm, chambered a round, and stood guard on the 3100 block of Weymouth. On March 16, 2025, defendants JOHN DAVID LOPEZ-BORIA a/k/a "Grande," LUIS WILLIAMS, and Co-Conspirator 17 physically assaulted an individual on the block, as captured on pole camera. On May 6, 2024, defendant ROMAN ROMAN-MONTANEZ and Co-Conspirator 12, now deceased, dragged an unknown person across the ground in the direction of the "bunker" at 3153 Weymouth Street, after which Co-Conspirator 12 struck the person with a rod.

6.      Members of the Weymouth DTO routinely possess firearms, either on their persons but more commonly in vehicles, houses, porches, fences, or abandoned lots, that they use to protect their drug stash, drug proceeds, and commit or threaten violent assaults. The indictment charges numerous instances in which Weymouth DTO members possessed firearms either on the block or shortly after leaving the block. To name just a few examples: in January 2019, the DTO stored three loaded firearms inside 3125 Weymouth Street; on August 27, 2019, defendant ANGEL RIOS-VALENTIN left the block with a loaded firearm—following a visit to 3152 Weymouth Street—and was convicted of a federal 922(g) offense; in December 2019, the DTO stashed a Hi-Point, Model 995 semiautomatic rifle, a Sig Sauer 9mm semiautomatic pistol, a Glock 26 9mm semiautomatic handgun, and a Keltec 9mm semiautomatic firearm, all inside of 3162 Weymouth Street; on March 11, 2022, defendant ELLIOT MATTEI-RODRIGUEZ was found in possession of two loaded Glock firearms, shortly after he left 3152 Weymouth Street; on August 2, 2020, defendant ANGEMILL GONZALEZ-CLAUDIO, a/k/a "Angel," a/k/a "Angie," went up to a car on the 3100 block of Weymouth Street, opened the trunk, took out two bags that contained rifles visibly sticking out, and displayed one firearm to males on the street

while depositing another firearm inside of a vehicle; in October 2022, defendants ROMAN-MONTANEZ and NANCY RIOS-VALENTIN had four loaded firearms in their residence, of 3152 Weymouth Street, while other DTO members possessed a Draco AK 47, an AR-15, and another loaded handgun, in other locations; just recently on August 13, 2025, defendant LUIS LEVANTE-MEDINA, a/k/a "Diamante," tossed a firearm onto the street as he was trying to evade law enforcement. Also on August 13, 2025, when the FBI and local police searched the DTO's "bunker" at 3153 Weymouth Street, they recovered numerous rounds of loose ammunition of various calibers, including AK 47 rounds.

7.     In addition, Weymouth DTO members—in order to promote the reputation of the Weymouth DTO and chill potential enemies from encroaching on the DTO's turf—will frequently appear in rap videos and other posts uploaded to Youtube and Instagram, in which they display firearms, use hand signs or flash insignias for the Weymouth DTO, and threaten acts of violence against rivals. Screenshots from some of these videos are below:

<u>"Patroncito"</u>



Shown above: Screenshot from YouTube video entitled "Patroncito," uploaded November 1, 2023 by an unindicted co-conspirator (Co-Conspirator 11), in which Co-Conspirator 12 (whose alias was "Panza") appears brandishing a firearm, and Co-Conspirator 11 raps the lyrics, "I'll get you with Panza with Draco and you're stiff"

<u>"Philly Boy"</u>





Shown above: Screenshots from YouTube video entitled "Philly Boy," uploaded April 19, 2024 by an unindicted co-conspirator (Co-Conspirator 13), filmed on the 3100 block of Weymouth Street, in which defendants ELLIOTT MATTEI-RODRIGUEZ, a/k/a "Elio," LUIS WILLIAMS, JOSE SANTANA-GONZALEZ, a/k/a "Chipi," a/k/a "Chepo," and JOHN DAVID LOPEZ-

BORIA, a/k/a "Grande," appear next to individuals wielding firearms, making gestures of violence or gang affiliation, and walking through streets that neighbor the 3100 block of Weymouth Street

<u>"23"</u>



Shown above, screenshot from YouTube video entitled "23," uploaded May 18, 2024 by Co-Conspirator 11, in which defendant JOHN DAVID LOPEZ-BORIA, a/k/a "Grande," appears brandishing a firearm, and in which LOPEZ-BORIA, Co-Conspirator 11, and others are shown holding stacks of drug proceeds on the 3100 block of Weymouth Street. The lyrics rapped include, "You die today or you die today, I will make sure of it, They told me the facts, you're talking to DEA."

<u>"Kaioken"</u>



Shown above, screenshot from YouTube video entitled "Kaioken," uploaded January 16, 2025 by an unindicted co-conspirator, Co-Conspirator 17, in which Co-Conspirator is seen brandishing a handgun with an extended magazine on a stoop outside the "bunker" at 3153 Weymouth Street, and in which defendant JOHN DAVID LOPEZ BORIA, a/k/a "Grande" also appears.   In the video, Co-Conspirator 17 raps lyrics that include, "I don't talk, I get in and will come to hunt you, asshole."

8.     The Weymouth DTO is an organized drug operation with an established scheduled of "shifts" for caseworkers and street dealers.  The schedule is distributed by leaders of the Weymouth DTO, such as defendants RAMON ROMAN-MONTANEZ and NANCY RIOS-VALENTIN, and sets forth which member of the group will be working on a given day of the week and during what time block.  An example of the written schedule from May 2022, which was provided by defendant NANCY RIOS VALENIN to another co-conspirator in a text message, is shown below.



The evidence in this case includes 6 months of recordings from Title III wiretaps—on phones belonging to five different defendants in the indictment—which in turn demonstrates that the DTO continues to work in an organized, business-like fashion, assigning shifts to different DTO members, coordinating the delivery of new installments of fentanyl, cocaine and crack to the block on a regular basis, and collecting and pooling proceeds from the sales of drugs so that they go back into a common pot.

9. Given the drug weights involved, the violent nature of the group, and the sentencing exposure for all individual charged, the government is seeking the pretrial detention of almost all the 33 defendants listed in the indictment. Every single one of these individuals

was an entrenched, committed member of the Weymouth DTO—with some defendants going back to 2016, 2017, and 2018, in terms of their activities on the 3100 block of Weymouth (defendants JOSE ANTONIO MORALES NIEVES, ANGEL RIOS VALENTIN, RAMON ROMAN-MONTANEZ, NANCY RIOS-VALENTIN, JAVIER RESTO-BERRIOS, CARLA DIAZ-RESTO), others steadily working on the block since the 2020, 2021, and 2022 time frame (defendants ANGEMILL GONZALEZ-CLAUDIO, ELLIOT MATTEI-RODRIGUEZ, KELVIN AGUAYO-GARCIA), and even what-may-be newer members of the Weymouth DTO demonstrating a steady record of involvement in the DTO at least for many months.

## II.     **LEGAL STANDARD**

Title 18 U.S.C. § 3142(g) sets forth the factors that this Court is to consider in determining whether a person should be released or detained pending trial in a federal court.  In summary, these factors are:

> 1) the nature and circumstances of the offenses charged;
> 2) the weight of the evidence against the defendant;
> 3) the history and characteristics of the defendant including-
>> a) employment history, financial resources, drug abuse, criminal history and record pf appearance at court proceedings, and
>> b) whether he was on supervision at the time of his offenses or arrests or was on release pending court proceedings;
> 4) the dangerousness to any person or the community.

18 U.S.C. § 3142(g).

The Bail Reform Act also provides that with respect to certain specified crimes, a rebuttable presumption arises that a defendant is a risk of flight and that no condition or combination of conditions will reasonably assure the safety of any other person and the community, such that detention pending trial is presumed warranted.  18 U.S.C. § 3142(e).  One

of the crimes specified is a violation of the Controlled Substances Act for which the maximum

term of imprisonment is 10 years' or greater.    Specifically, Section 3142(e)(3) states:

> Subject to rebuttal…it shall be presumed that
> no condition or combination of conditions will
> reasonably assure the appearance of the person as
> required and the safety of the community
> if the judicial officer finds that there is
> probable cause to believe that the person
> committed:
>
> (A) an offense for which a maximum term
> of imprisonment of ten years or more is prescribed
> in the Controlled Substances Act (21 U.S.C. § 801
> et seq.)…
>
> (B) an offense under section 924(c) . . . of this title.

18 U.S.C. §§ 3142(e)(3)(A), (B).

Here, because the amount of fentanyl charged in Count One and attributable to defendant

is 400 grams or more, and the amount of crack cocaine charged in Count One and attributable to

the defendant is 280 grams or more, the maximum term of imprisonment the defendant faces

under the Controlled Substances Act is life imprisonment.   *See* 21 U.S.C. 841(a)(1), (b)(1)(A).

Accordingly, the presumption in favor of detention under the Bail Reform Act is triggered in this

case.

Where the presumption in favor of detention arises, a defendant must rebut the

presumption by presenting some credible evidence that he/she will not flee and does not pose a

threat to the community.  *United States v. Suppa*, 799 F.2d 115, 120 (3d Cir. 1986).   In drug-

trafficking cases such as this, the presumption is difficult to overcome.  "The statutory language,

as well as the legislative history [of the Bail Reform Act], unequivocally establishes that

Congress intended to equate traffic in drugs with a danger to the community." *Strong,* 775 F.2d

at 506. Indeed, Congress and the Third Circuit have provided this guidance:

> The [Judiciary] Committee intends that the concern about safety be
> given a broader construction than merely danger of harm involving
> physical violence. ... **The Committee also emphasizes that the
> risk that a defendant will continue to engage in drug
> trafficking constitutes a danger to the "safety of any other
> person or the community."**

*Id.* at 507 (quoting S. Rep. No. 225, 98th Cong., 2d Sess. 12-13) (emphasis in original). As the

Third Circuit has noted: "It is well known that drug trafficking is carried on to an unusual degree

by persons engaged in continuing patterns of criminal activity. Persons charged with major drug

felonies are often in the business of importing or distributing dangerous drugs, and, thus, because

of the nature of the criminal activity with which they are charged, they pose a significant risk of

pretrial recidivism." *Strong*, 775 F.2d at 507 (quoting S. Rep. No. 225, 98th Cong., 1st Sess. 20);

*accord United States v. Cervantes,* 951 F.2d 859, 861 (7th Cir. 1992) (defendant involved in the

distribution of large quantities of drugs poses continuing danger to the community); *United*

*States v. Ramirez*, 843 F.2d 256, 258 (7th Cir. 1988) (same).

## III.     INDIVIDUALIZED ANALYSIS FOR THE DEFENDANT

Defendant NANCY RIOS-VALENTIN cannot overcome the presumption in favor of

detention here. As discussed below, she demonstrates a serious danger to the community as well

as a risk of flight if released.

Specific Charges / Evidence Pertaining to the Defendant

Defendant NANCY RIOS-VALENTIN is charged in Count One, the conspiracy count,

with a drug weight attributable to her of 400 grams or more of fentanyl, 500 grams or more of

powder cocaine, and 280 grams or more of crack cocaine, as well as in Count Thirty-Six, with

possessing fentanyl and 28 grams or more of crack cocaine in her residence, 3152 Weymouth Street, on August 13, 2025. She is also charged with one count of conspiring to sponsor, exhibit, and possess animals for the purposes of an animal fighting venture, in violation of 18 U.S.C. § 371 (Count Forty-One). In addition, the indictment describes how defendant NANCY RIOS-VALENTIN communicated with defendant JAVIER RESTO-BERRIOS, a/ka/ "Chicken," about his expected shipment of a parcel to the 3100 block of Weymouth Street, containing a half-kilogram of fentanyl, on May 10, 2025.

Defendant NANCY RIOS-VALENTIN, like her paramour, RAMON ROMAN-MONTANEZ, is a leader of the Weymouth DTO and has occupied a leadership position for many years. She was the sister of Co-Conspirator 1, who for a period of the time was another top leader of operations on the block—a position that ROMAN-MONTANEZ took over—until Co-Conspirator 1was killed in November 2024. When her brother occupied that position, defendant NANCY RIOS-VALENTIN helped him coordinate drug shifts, as demonstrated by the drug shift schedule she texted him in May 2022 (pasted into the indictment and referenced above). There are also historical text messages between NANCY RIOS-VALENTIN and defendant CARLA DIAZ-RESTO, from 2022, in which they sent the same photograph of the drug shift schedule back and forth to one another. In addition, defendant NANCY RIOS-VALENTIN is captured on numerous wire recordings in this case discussing the drug shift schedule, who will be working that day on the block, and whether the street-sellers have sufficient quantities of drugs for sale.

From at least 2018 through the present, NANCY RIOS-VALENIN has lived on the block with ROMAN-MONTANEZ, at 3152 Weymouth Street, and permitted the DTO to use her house as an on-the-block stash location for the DTO as well as for other illegal purposes. Here is a run-

down of the drugs and guns the police have seized from that same house over the past seven years—all the while as NANCY RIOS-VALENTIN was living there with RAMON ROMAN-MONTANEZ (and what appears to be their minor children):

Seizures from 3152 Weymouth Street:

- **April 7, 2018:** 59 grams of fentanyl, 26 grams of cocaine, and $55,000 in drug proceeds.

- **January 23, 2019**: Numerous firearms and ammunition. Specifically, a Taurus PT99 AF 9mm semi-automatic pistol, loaded with 16 live rounds of ammunition; a Smith & Wesson .38 Special revolver, bearing serial number #J75447; a Ruger LC9, 9mm semi-automatic pistol, bearing serial number #321-15519, loaded with 10 live rounds of ammunition; a box of .40 caliber ammunition; a box of .38 special ammunition; and two black magazines.

- **October 22, 2022**: 96 grams of fentanyl, eight grams of fentanyl pills, $124,000 in drug proceeds, four firearms, all of which were loaded, and detailed ledger sheets.

- **August 13, 2025**: 6 grams of fentanyl, 66 grams of crack, ledger sheets, and $24,000 in drug proceeds

In addition, on August 27, 2019, defendant ANGEL RIOS-VALENTIN (another brother of NANCY RIOS-VALENTIN) picked up a loaded firearm, namely a Polymer 80 Inc., Model PCF940, .40 caliber S&W—from 3152 Weymouth Street, left with the firearm in a satchel, and was arrested shortly thereafter with the firearm in his possession.

The defendant was not merely a passive participant in the Weymouth DTO, privately assisting behind the scenes from her home, but otherwise staying out of the mix of block activity. To the contrary, NANCY RIOS VALENTIN was regularly seen on the block, through both pole camera and other recordings, engaging with other DTO members, and she was regularly heard on the wire, coordinating with co-defendants about daily block activities, such as shifts, drug proceeds, and available supplies of drugs. At the end of shifts, the transmitting of drug proceeds would often happen at her home, on the porch of 3152 Weymouth Street. As an example of her

willingness to exercise her authority including through aggressive acts, on March 17, 2025, she approached co-defendant LUIS WILLIAMS a/k/a "Prendi Pas," in the middle of the block, and yelled at him for messing up the count. Photographs of her doing this (she is wearing the white sweatshirt) are below. After NANCY RIOS-VALENTIN chastised WILLIAMS, co-defendant ELLIOT MATTEI-RODRIGUEZ a/k/a "Elio", and then afterwards, a now deceased co-conspirator (whose nickname was "Panza"), each physically assaulted WILLIAMS. Photographs of these events are below:







NANCY RIOS-VALENTIN was so loyal and indebted to enforcers for the DTO such as Elio and Panza, who did her bidding to conduct violent acts in order to ensure that she and ROMAN-MONTANEZ maintained control over the block, that she went all the way to the funeral of Panza in Puerto Rico, earlier this month.

<u>Criminal History</u>

NANCY RIOS VALENTIN has no prior criminal convictions. However, she has three prior arrests on the 3100 block of Weymouth Street, demonstrating the length of her involvement with this DTO. On or about May 5, 2016, she interfered with and hindered the arrest of her brother, Co-Conspirator 1, during his arrest on 3100 Weymouth Street, and she was arrested as a result. On January 23, 2019, NANCY RIOS-VALENTIN was arrested with RAMON ROMAN-MONTANEZ and others for drug-related charges. In October 2022, NANCY RIOS-VALENTIN was arrested by PPD along with multiple other individuals, including ROMAN-MONTANEZ, for a drug conspiracy involving 3100 Weymouth Street at the end of a lengthy PPD investigation. Also, as described above, at the time of her arrest in October 2022, PPD executed a search warrant on her and ROMAN-MONTANEZ's residence of 3152 Weymouth Street and recovered 96 grams of fentanyl (across 2,800 packets), approximately $124,000, four loaded firearms, and drug-related notes and ledgers. In a review of phones recovered from this residence in 2022 pursuant to a follow-on federal search warrant, a phone attributed to NANCY RIOS-VALENTIN contained at least two conversations where she sent the caseworker schedule to two different Weymouth DTO members—Co-conspirator 1, and Karla.

<u>Flight Risk</u>

NANCY RIOS VALENTIN faces a 10-year mandatory minimum and a Guidelines range above that. Despite her long history of involvement with the Weymouth DTO, and despite being

arrested three times for DTO-related activities, she has never been convicted or served time in jail.  Meanwhile, NANCY RIOS VALENTIN has strong familial ties to Puerto Rico, as she has a sister who lives their full time.  She also flew to Puerto Rico as recently as October 13, 2025, with RAMON ROMAN-MONTANEZ for the funeral of a fellow DTO member who was violently murdered. Up until the execution of these warrants it appeared that the DTO was planning on a way to retaliate for this murder. While Puerto Rico is a U.S. Territory, it can prove to be exceedingly difficult to find individuals who flee there. It took extensive location monitoring to find the number one defendant in this case at his compound in Luquillo, Puerto Rico. Another DTO member, wanted for a homicide, was on the run for months until he was recently found. The options for release for N. RIOS-VALENTIN are not good. She either stays at her home, the nucleus of the group's drug trafficking operation, or she flees to Puerto Rico and becomes difficult if not impossible to find.

While she has employment records indicating that she has worked from time to time for two different home health care agencies in Philadelphia, between 2021 and 2024, her last reported quarterly wages were of $1,131 in 2024Q1 and $3,435 in 2024Q2—indicating that whatever engagement she may have had with these home health care agencies, it was not the type of deep employment tie in the community that would  overcome an incentive to depart the jurisdiction.   The government recognizes that she has four minor children, but there is nothing stopping her from attempting to flee with her children—either at the same time or arranging for them to be brought to her by another family member thereafter, wherever she were to go.  The government submits that NANCY RIOS-VALENTIN presents a flight risk.

Danger to the Community

Defendant NANCY RIOS VALENTIN presents a danger to the community that no conditions of pretrial release can sufficiently protect against. She has operated as a leader of this DTO for years, which has in turn trafficked kilograms of fentanyl, cocaine, and crack cocaine in Philadelphia, and has repeatedly resorted to violence in order to promote the DTO's objectives. As noted above, an example of her personal involvement in this sort of violence comes from March 17, 2025, when she confronted DTO-member LUIS WILLIAMS for messing up the count—in the middle of the block—after which Co-Conspirator 12 assaulted WILLIAMS. Further back, on April 12, 2016, she was charged with hindering apprehension or prosecution for interfering with the arrest of her brother, Co-Conspirator 1 (this case has no reported disposition). And on numerous occasions NANCY RIOS-VALENTIN had dangerous firearms in her home or easily accessible—in 2019 (when firearms were seized from her home), in 2022 (when four firearms were seized from her home), and just last Friday, October 24, 2025, where she and ROMAN-MONTANEZ had a key to 3150 Weymouth Street, the property next door, where a firearm was stored.

N. RIOS-VALENTIN's arrest history is another example of the failure of the criminal justice system to hold her accountable up until this point. It is clear that three separate times (2016, 2019, 2022), NANCY RIOS-VALENTIN was arrested and released on conditions, but displayed little respect for them, as she continued to sell drugs with the Weymouth DTO, possess weapons in her home, and mutilate animals—conducting much of this conduct from her house in the middle of the 3100 block if Weymouth Street. So pervasive is the drug conduct emanating from her home that the Grand Jury voted to include her property in the notice of criminal forfeiture. Sending N. RIOS-VALENTINE back to that residence will mean business as usual for this DTO.

The above record makes clear that NANCY RIOS-VALENTIN presents a danger to the community and cannot be trusted to abide by conditions of pretrial release.

IV.     **<u>CONCLUSION</u>**

When all of these factors are viewed in light of the substantial sentence the defendant faces if convicted, it is clear that no condition or combination of conditions will reasonably assure the presence of defendant as required and/or the safety of the community and the confidential sources in this case.  WHEREFORE, the government respectfully submits that the Government's Motion for Defendant's Pretrial Detention should be granted.


Respectfully submitted,

DAVID METCALF
United States Attorney


*/s/ Sara A. Solow*
SARA A. SOLOW
JASON D. GRENELL
Assistant United States Attorney


Dated:  October 29, 2025

## CERTIFICATE OF SERVICE

I certify that a copy of the Government's Motion for Pretrial Detention was

served by electronic mail, on the following defense counsel:

Edward F. Borden, Jr., Esq.
eborden@earpcohn.com

 /s/ Sara A. Solow                                    
SARA A. SOLOW
Assistant United States Attorney

Date:  October 29, 2025